IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

BYRON MEEKS,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:20-cv-00583

BOBBY McCLUNG, et al.,

                Defendants.

**<u>PROPOSED FINDINGS & RECOMMENDATION</u>**

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)  Before this Court is the motion to dismiss filed by Defendants Bobby McClung ("McClung"), Matthew Eichhorn ("Eichhorn"), Derran Winans ("Winans"),[1] and Mike Winters ("Winters") (collectively, "Defendants").  (ECF No. 5.)  For the reasons explained more fully herein, it is respectfully **RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

I.      *BACKGROUND*

Plaintiff Byron Meeks ("Plaintiff") brings this action against Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983, alleging violations of the First, Fourth, and Fourteenth Amendments of the federal Constitution, and West Virginia

---

[1] Winans is identified as "Darren Wimans" in the complaint.  (ECF No. 1 at 1.)  The undersigned uses what is asserted to be the correct spelling of Winans's first and last names in this Proposed Findings & Recommendation.

state law.   (ECF No. 1 at 2–4, 6.)[2]   He avers that on August 6, 2020, an individual came to his vehicle repair shop in Parkersburg, West Virginia, and asked him if he "had seen what happed [sic] to the Parts off his truck," which was parked at another nearby vehicle repair shop not owned by Plaintiff.   (*Id.* at 5.)   According to Plaintiff, the individual believed that the owner of the shop—whom Plaintiff claims is a friend of Parkersburg's police chief and Eichhorn, a Parkersburg police officer—stole the parts.   (*Id.*)   Plaintiff alleges that he agreed to "be a witness" for the individual "from what [he] watched on the Video on Survelance [sic] system," and the individual went to the police department and filed a report with Eichhorn.   (*Id.*)

Plaintiff further alleges that a few hours later, Eichhorn, another Parkersburg police officer, and Parkersburg city code enforcement officials McClung, Winans and Winters came to Plaintiff's vehicle repair shop "over a Parking complaint."   (*Id.*) Plaintiff avers that he moved the vehicle that was the subject of the complaint from the street to "the Gated and Fenced posted Property he own [sic]."   (*Id.*)   He alleges that the vehicle belonged to one of his customers, and unbeknownst to Plaintiff, "someone had stolen the tags off the vehicle."   (*Id.*)   According to Plaintiff, the city code enforcement officials—at the direction of city code enforcement director McClung, with whom Plaintiff had a personal dispute "2 years back"—unlawfully searched his property, collected evidence, and took photographs without an administrative search warrant.   (*Id.*)

---

2 Plaintiff, in his brief in opposition to Defendants' motion to dismiss, purports to allege additional claims against Defendants and others that were not included in his initial complaint.   (ECF No. 14 at 2–4.)   But "parties cannot amend their complaints through briefing or oral advocacy."   *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).   Accordingly, the undersigned will not consider these claims or the documents Plaintiff has provided to support them. Moreover, the claims appear to overlap with those Plaintiff brought in a previous lawsuit that this Court dismissed.   *See Meeks v. Martin, et al.*, Civil Action No. 2:19-cv-00846.

Plaintiff avers that several days later, on August 10, 2020, Eichhorn came to his residence and, without Plaintiff's permission or a search warrant, inspected a vehicle that was parked in his "off road Parking for his customers [sic] vehicles" and was "not even visible from were [sic] [Eichhorn] had Parked." (*Id.*)  He alleges that Eichhorn then went to the nearby vehicle repair shop whose owner was accused of theft in the complaint filed with Eichhorn on August 6, 2020.  (*Id.*)  According to Plaintiff, when Eichhorn came back from the other vehicle repair shop a short time later, he told Plaintiff that the vehicle he had been inspecting "Was stolen out of Rhode Island."  (*Id.*)  Plaintiff avers that he had traded for the vehicle a year prior and told Eichhorn that he had "the Title And Noterized [sic] Bill of Sale for the Car."  (*Id.*)  He alleges that Eichhorn instructed him to provide the title and "said he would be back."  (*Id.*)

According to Plaintiff, when Eichhorn returned, he had "no Papers in Hand[,] kept [Plaintiff's] Title[,] and told him he was under arrest for a [sic] receiving a Stolen Vehicle." (*Id.*)  Plaintiff claims that Eichhorn did not have a warrant to arrest him.  (*Id.*)  He alleges that he "Called his title agency" and "asked [a woman] to run the vehicle while [Eichhorn] was present," and the woman "told [Plaintiff] is [sic] does not show to be stolen."  (*Id.*)  Plaintiff further alleges that Eichhorn then told him "in front of his wife and children, in front of his customers he had to goto [sic] Jail."  (*Id.*)  According to Plaintiff, he had to wait three hours to be arraigned, and he "had a conflict of intrest [sic]" with the magistrate due to a disagreement with the magistrate's wife "earlier that year over a sidewalk that never had been replaced in front of the judges [sic] house."  (*Id.*) Plaintiff claims that the magistrate "signed the complaint" and "was very angry for some reason, you could see the resentment in his exspressions [sic]."  (*Id.*)  He avers that he was charged "with a Felony receiving Stolen Vehicle."  (*Id.*)

Plaintiff alleges that the following day, August 11, 2020, the individual who had filed a complaint with Eichhorn "went to the police station to see [him] about his truck parts." (*Id.*)   According to Plaintiff, Eichhorn informed the individual that Plaintiff "Was arrested on Felony receiving Stolen V[eh]icle and w[a]s not Creditable Enuff [sic]." (*Id.*)   Plaintiff avers that Eichhorn also told the individual "he had a mechanics [sic] lien on his truck."   (*Id.*)

Plaintiff filed this action on September 8, 2020.   (ECF No. 1.)   Defendants filed their motion to dismiss on October 5, 2020.   (ECF No. 5.)   Plaintiff timely responded (ECF No. 14), and Defendants timely replied (ECF No. 15).   As such, Defendants' motion is fully briefed and ready for resolution.[3]

## II.   LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).   However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

3  To the extent Plaintiff argues that this Court should delay addressing Defendants' motion to dismiss until after discovery (ECF No. 14 at 2), a complaint that does not meet the threshold requirements of Federal Rule of Civil Procedure 8(a) cannot move forward to the discovery stage of litigation.   *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because Respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III.   ANALYSIS

Defendants argue that all of Plaintiff's claims against them should be dismissed because his complaint "is nothing but speculation and conjecture" and fails to plead

sufficient facts to establish any cause of action against them.   (ECF No. 6 at 5–8.)   They

further contend that they are entitled to qualified immunity with respect to all of

Plaintiff's claims against them because he has not alleged a constitutional violation.   (*Id.*

at 9–10.)[4]

A.  *42 U.S.C. § 1983 Claims*

1.  *First Amendment Claims*

Plaintiff's complaint fails to allege that Defendants violated his First Amendment

rights.   "The threshold question in any First Amendment challenge . . . is whether any

protected First Amendment right is involved."   *Willis v. Town of Marshall*, 426 F.3d 251,

257 (4th Cir. 2005).   The First Amendment protects religious freedom, free expression,

and the rights to peaceably assemble and petition the government.   U.S. Const. amend.

I.   Plaintiff mentions the First Amendment only once in his complaint, in a standalone

reference that is not connected to any of the complaint's factual allegations.   (ECF No. 1

at 4.)   And even construed liberally, those factual allegations do not relate to any of the

freedoms the First Amendment protects.   (*Id.* at 5.)   Therefore, the undersigned **FINDS**

that Plaintiff has not alleged a First Amendment violation.   *Willis*, 426 F.3d at 257 (citing

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985)).   It is

respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be

**GRANTED** as to any § 1983 claims against them in their official and individual capacities

based on violations of the First Amendment.

---

4 Plaintiff asserts that Defendants seek to dismiss this action for insufficient service of process pursuant to
Federal Rule of Civil Procedure 12(b)(5).   (ECF No. 14 at 2–3.)   However, Defendants do not raise this
argument in their motion to dismiss, as they acknowledge in their reply brief.   (ECF No. 15 at 1–2.)   As
such, there is no need for the undersigned to address whether Defendants were properly served with the
complaint.   Fed. R. Civ. P. 12(h)(1)(A) (providing that certain defenses are waived if not raised in first
motion to dismiss).

2. *Fourth Amendment Claims*

Plaintiff purports to allege several violations of his Fourth Amendment rights. (ECF No. 1 at 5–6.) He avers that McClung, Winans, and Winters conducted "an illegal search of [his] Property's [sic]" without "provid[ing] an administrative search warrant," "collect[ed] evidence," and took photographs "on posted private property." (*Id.*) He also asserts that Eichhorn went onto his "off road Parking for his customers [sic] vehicles" to inspect a vehicle without a warrant to do so and arrested Plaintiff without obtaining a warrant. (*Id.*)

a. *Claims Against McClung, Winans, and Winters*

Plaintiff has sufficiently alleged Fourth Amendment claims against McClung, Winans, and Winters for searching his gated, fenced parking lot for his repair shop without a warrant to do so. The Fourth Amendment's prohibition against unreasonable searches renders "warrantless searches . . . generally unreasonable," and its protections "appl[y] to commercial premises as well as homes." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978). "[T]he Government has 'greater latitude to conduct warrantless inspections of commercial property' because 'the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home.'" *Dow Chem. Co. v. United States*, 476 U.S. 227, 237–38 (1986) (quoting *Donovan v. Dewey*, 452 U.S. 594, 598–99 (1981)). "[W]ith regard to regulatory inspections . . . '[w]hat is observable by the public is observable without a warrant, by the Government inspector as well.'" *Id.* at 238 (quoting *Marshall*, 436 U.S. at 315). But "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or

physical force within the framework of a warrant procedure." *See v. City of Seattle*, 387 U.S. 541, 545 (1967).

The complaint in this case alleges that McClung, Winans, and Winters came to Plaintiff's repair shop "over a Parking complaint" about a vehicle belonging to one of Plaintiff's customers being parked "on the roadway." (ECF No. 1 at 5.) Plaintiff avers that after he "Moved the vehicle Back On the Gated and Fenced posted Property he own [sic]," McClung, Winans, and Winters—at McClung's direction and without Plaintiff's consent—nonetheless proceeded to trespass on and inspect the "private off road parking facilitys [sic]," collect evidence, and take photographs without a warrant to do so. (*Id.*) Construed liberally, these allegations indicate that McClung, Winans, and Winters, despite not having a warrant authorizing their investigation, entered property associated with Plaintiff's repair shop that he intended not to be accessible to the public.

Although the allegations in the complaint suggest that the parking area at issue in this case is not adjacent to Plaintiff's repair shop—and thus cannot possibly be "business curtilage" of that shop—"the act of sealing the property" with a fence, a locked gate, and signage prohibiting entry still "creates an elevated expectation of privacy." *Edens v. Kennedy*, 112 F. App'x 870, 875 (4th Cir. 2004) (citing *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *Alvarez v. Montgomery Cty.*, 147 F.3d 354, 357 (4th Cir. 1998)). "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See*, 387 U.S. at 543. Plaintiff avers that McClung, Winans, and Winters did more than simply observe the parking area from outside the fence; the complaint alleges that they went onto the property and looked around. (ECF No. 1 at 5.) This alleged warrantless physical entry of an area that Plaintiff claims was "Gated and Fenced posted Property"

without Plaintiff's consent constitutes a Fourth Amendment violation under the circumstances set forth in the complaint. *See Dow Chem. Co.*, 476 U.S. at 236–37 ("Dow's inner manufacturing areas are elaborately secured to ensure they are not open or exposed to the public from the ground. Any actual physical entry by EPA into any enclosed area would raise significantly different questions . . . ."). McClung's, Winans's, and Winters's alleged actions are all the more unreasonable given the allegations that they arrived at Plaintiff's business "over a Parking complaint" because a vehicle belonging to one of Plaintiff's customers was parked "on the roadway," and Plaintiff moved it into the parking area. (ECF No. 1 at 5.)[5]

Further, at this stage of the litigation, McClung, Winans, and Winters are not entitled to qualified immunity with regard to the Fourth Amendment claims against them in their individual capacities. "Qualified immunity protects officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (internal quotation marks omitted). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 538 (internal quotation marks omitted). In short, there must be "a case where an officer acting under similar circumstances . . . was held to have violated the [constitutional provision at issue]." *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Safar v. Tingle*, 859 F.3d 241, 247 (4th Cir. 2017). Although the case need not

---

5 The parties' briefs and Plaintiff's prior case before this Court indicate that Plaintiff's complaint perhaps does not present a full picture of the reasons for the city code enforcement officials' presence at his repair shop's off-street parking area on August 6, 2020. However, in ruling on Defendants' motion to dismiss, this Court is bound by the facts alleged in the complaint. *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991) ("If facts outside the complaint are to be considered, either party or the district court, *sua sponte*, shall cause an order to be entered converting the motion to dismiss into a motion for summary judgment . . . .); Fed. R. Civ. P. 12(d).

be "directly on point for a right to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted).[6]  On August 6, 2020, the date Plaintiff alleges McClung, Winans, and Winters searched his parking area, it was clearly established that a code enforcement official cannot enter private commercial property without first securing a warrant authorizing the search.  *See*, 387 U.S. at 545–46.  Accordingly, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **DENIED** as to Plaintiff's Fourth Amendment claims against McClung, Winans, and Winters in their individual capacities based on their alleged search of his repair shop's parking area on August 6, 2020.

However, Plaintiff has not sufficiently stated Fourth Amendment claims against McClung, Winans, and Winters in their official capacities stemming from the alleged search.  "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' and in essence are 'suit[s] against the entity.'"  *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  The complaint alleges that McClung is the city code enforcement director and that Winans and Winters are city code enforcement officials for the City of Parkersburg, West Virginia.  (ECF No. 1 at 2–3.)  Plaintiff's official-capacity claims against them are therefore claims against the City of Parkersburg.

"[A] municipality cannot be held liable [under § 1983] solely because it employs a tortfeasor."  *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (emphasis

---

6 Only cases from the United States Supreme Court, the Fourth Circuit Court of Appeals, or the West Virginia Supreme Court of Appeals are relevant to that determination in this case.  *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) ("To determine if the right in question was clearly established, we first look to cases from the Supreme Court, this Court of Appeals, or the highest court of the state in which the action arose." (citing *Owens* ex rel. *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004))).

deleted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).   Instead, "a municipality is subject to [§] 1983 liability only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the plaintiff's injury."   *Davison v. Randall*, 912 F.3d 666, 689 (4th Cir. 2019) (internal quotation marks omitted); *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) ("[T]he entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks omitted)).   In this case, Plaintiff alleges that McClung, the city code enforcement director, ordered the unlawful search of his off-street parking lot.   (ECF No. 1 at 2, 5.)   "[I]n assessing whether a municipality may be held liable for constitutional . . . violations of [its] decisionmakers, the touchstone inquiry is whether 'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'"   *Davison*, 912 F.3d at 689 (quoting *Hunter*, 897 F.3d at 554–55) (emphasis deleted).   This is a question of state law.   *Hunter*, 897 F.3d at 555 (quoting *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000)).

West Virginia law authorizes municipalities "to provide for the entering and inspection of private premises to aid in the enforcement of any state law or municipal ordinance," within the bounds of the state constitution's prohibition against unreasonable searches and seizures.   W. Va. Code § 8-12-15.   The City of Parkersburg largely vests such authority in the Department of Public Works, directing it to "issue permits for and conduct inspections of buildings, building construction, plumbing, electrical, elevator and other building installations, and enforce the zoning ordinances . . . and any other similar or related land-use ordinances or laws."   Parkersburg, W. Va., Charter § 4.203.   A city ordinance further delegates the power to "[a]dminister and enforce the Building Code and Zoning Ordinance of the City" to "[t]he Division of Code Enforcement, headed by a

Director, which Division and Director shall be under the supervision, direction and control of the Director of Public Works pursuant to the City Charter." Parkersburg, W. Va., Code § 128.05(a)(1)(A). Therefore, the Director of Public Works, not McClung, has final policymaking authority with regard to city code enforcement. It is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's Fourth Amendment claims against McClung, Winans, and Winters in their official capacities based on their alleged search of his repair shop's parking area on August 6, 2020.

To the extent he seeks to do so, Plaintiff has not adequately alleged Fourth Amendment violations against McClung, Winans, and Winters based on any seizure that may have occurred during the investigative search. His complaint merely states, "When a code official illegaly [sic] collects evidence for criminal prosecution or procedure in any court[,] It deprives the owner of the fourth amendment of the constitution and the state law." (ECF No. 1 at 5.) Plaintiff also avers that McClung and Winans "collect[ed] evidence" but provides no further details about which items were seized. (*Id.* at 5–6.) These conclusory statements are insufficient to survive a motion to dismiss. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) ("[L]egal conclusions pleaded as factual allegations, 'unwarranted inferences,' 'unreasonable conclusions,' and 'naked assertions devoid of further factual enhancement' are not entitled to the presumption of truth." (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015))). As such, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's Fourth Amendment claims against McClung, Winans, and Winters in their individual and official capacities based on any alleged seizure that occurred on August 6, 2020.

###### b.    *Claims Against Eichhorn*

For the same reasons the complaint states Fourth Amendment claims against McClung, Winans, and Winters in their individual capacities for entering Plaintiff's off-street parking area without a warrant, Plaintiff has sufficiently alleged a similar claim against Eichhorn.   Specifically, he avers that on August 10, 2020, Eichhorn entered his "off road Parking for his customers vehicles" without being "granted access" or "hav[ing] a search warrant" and inspected a vehicle "that was not even visible from were [sic] [he] had Parked."   (ECF No. 1 at 5.)   As with McClung's, Winans's, and Winters's alleged entry four days earlier, Eichhorn's alleged warrantless physical entry of an area that Plaintiff claims was "Gated and Fenced posted Property" without his consent constitutes a Fourth Amendment violation under the circumstances set forth in the complaint.   And like McClung, Winans, and Winters, Eichhorn is not entitled to qualified immunity because on August 10, 2020, it was clearly established that a city official cannot enter commercial property closed to the public without first securing a warrant authorizing the search.   *See*, 387 U.S. at 545–46.   Thus, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **DENIED** as to Plaintiff's Fourth Amendment claim against Eichhorn in his individual capacity stemming from his alleged search of the repair shop's off-street parking facility.

Plaintiff's Fourth Amendment claim against Eichhorn in his official capacity arising from the same conduct fails, however.   The complaint alleges that Eichhorn is a "Lt of Parkersburg Police Dept," so any official-capacity claims against him are simply claims against the City of Parkersburg.   *Andrews*, 201 F.3d at 525 (quoting *Graham*, 473 U.S. at 165–66).   Again, "a municipality is subject to [§] 1983 liability only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the plaintiff's injury." *Davison*, 912 F.3d at 689

(internal quotation marks omitted). Plaintiff has not even alleged generally that

Eichhorn searched his property without a warrant pursuant to some official policy of the

City of Parkersburg, nor does he claim that Eichhorn possessed overarching authority to

direct official policy regarding the search. (ECF No. 1 at 5.) Instead, Plaintiff's official-

capacity claim against Eichhorn arising out of the allegedly warrantless search appears to

rely on the City of Parkersburg being vicariously liable for Eichhorn's actions, which is an

improper basis for a § 1983 claim. *Hunter*, 897 F.3d at 553 ("[A] municipality cannot be

held liable [under § 1983] solely because it employs a tortfeasor." (emphasis deleted)

(quoting *Monell*, 436 U.S. at 691)). Accordingly, it is respectfully **RECOMMENDED**

that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's Fourth

Amendment claim against Eichhorn in his official capacity stemming from his alleged

search of the repair shop's off-street parking facility.

Plaintiff has also adequately alleged a Fourth Amendment claim against Eichhorn

for arresting him without a warrant. "The Fourth Amendment prohibits law

enforcement officers from making unreasonable seizures, and seizure of an individual

effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85

F.3d 178, 183 (4th Cir. 1996). Stated another way, "a warrantless arrest by a law officer

is reasonable under the Fourth Amendment where there is probable cause to believe that

a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146,

152 (2004). "'Probable cause' to justify an arrest means facts and circumstances within

the officer's knowledge that are sufficient to warrant a prudent person, or one of

reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense." *United States v. Gray*, 137

F.3d 765, 769 (4th Cir. 1998) (en banc) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Here, the complaint alleges that when Eichhorn told Plaintiff "that The Honda He traded for A year ago Was stolen out of Rhode Island," Plaintiff provided Eichhorn a title for the vehicle and "Called his title agency," which confirmed that the vehicle "does not show to be stolen." (ECF No. 1 at 5.) Plaintiff avers that Eichhorn himself "Had no paper work [sic] on the stolen Honda" but nonetheless arrested Plaintiff "for a [sic] receiving a Stolen Vehicle." (*Id.*) A reasonable person could not possibly believe under these facts, which reflect that Plaintiff provided Eichhorn with evidence that the vehicle was not stolen and Eichhorn had no contrary evidence showing that it was stolen, that Plaintiff had committed the offense of receiving a stolen vehicle. And because it was clearly established on August 10, 2020—the date of Plaintiff's allegedly warrantless arrest—that making such an arrest requires probable cause to believe an offense was committed, Eichhorn is not entitled to qualified immunity at this stage of the proceedings. Accordingly, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **DENIED** as to Plaintiff's Fourth Amendment claim against Eichhorn in his individual capacity stemming from the allegedly warrantless arrest.

However, Plaintiff has failed to allege an official-capacity claim against Eichhorn for that conduct. Like with regard to the allegedly unlawful search, the complaint does not even generally assert that Eichhorn arrested Plaintiff without a warrant pursuant to a City of Parkersburg policy or custom and seems to be based on vicarious liability. (ECF No. 1 at 5.) As such, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's Fourth Amendment claim against Eichhorn in his official capacity relating to the allegedly warrantless arrest.

15

### 3. Fourteenth Amendment Claims

Defendants' conduct that Plaintiff alleges violates the Fourteenth Amendment's due process guarantee appears coextensive with his alleged Fourth Amendment violations. (ECF No. 1 at 5–6.) "[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, the undersigned **FINDS** that any substantive due process claim against Defendants fails and respectfully **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's § 1983 claims against them that are based on violations of his substantive due process rights.

### B. State-Law Claims

Plaintiff's complaint fails to state a cognizable claim under the state statutes he cites. He alleges that McClung, Winans, and Winters violated West Virginia Code § 61-3B-3 by coming onto his "private off road parking facilitys [sic]." (ECF No. 1 at 5–6.) But § 61-3B-3 is a criminal statute. As a general proposition, "[a] plaintiff cannot sue to enforce rights under criminal statutes; '[o]nly the government has the ability to imprison people and thus to enforce these statutes.'" *Cook v. Unisys Federal Gov't Grp.*, No. 7:14-cv-579, 2015 WL 5690928, at *6 (W.D. Va. Sept. 3, 2015) (quoting *Bey v. North Carolina*, No. 3:12-cv-454, 2012 WL 3528005, at *1 (W.D.N.C. Aug. 14, 2012)), *adopted by* 2015 WL 5690976 (W.D. Va. Sept. 28, 2015). Stated another way, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). As such, the undersigned **FINDS** that Plaintiff cannot bring a cause of action against McClung, Winans, and Winters pursuant

to § 61-3B-3 and respectfully **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to those claims.

To the extent Plaintiff instead seeks to allege a common-law tort claim for trespass, it likewise fails.   Under West Virginia law, trespass is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945). Even assuming, as Plaintiff implies, that McClung, Winans, and Winters came onto his property without lawful authority after he moved the vehicle that was the subject of the parking complaint, he has not alleged that they damaged his real property in any manner. (ECF No. 1 at 5.)   Accordingly, the undersigned **FINDS** that Plaintiff has not alleged common-law trespass claims against McClung, Winans, and Winters and respectfully **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to any such claims.

Plaintiff also alleges that McClung's, Winans's, and Winters's actions violated West Virginia Code § 8-12-16.   (ECF No. 1 at 5–6.)   As Defendants point out, § 8-12-16 "is simply inapplicable in this case."   (ECF No. 6 at 6 (footnote omitted).)   That statute authorizes West Virginia municipalities to "adopt ordinances regulating the repair, alteration, or improvement, or the vacating and closing or removal and demolition . . . of any structure, dwelling, or building . . . that is unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare."   W. Va. Code § 8-12-16(b).   The particular provisions of the statute Plaintiff references in his complaint establish procedural requirements for "[w]hen a code enforcement agency official enters the premises of the property for investigating or inspecting any structure, dwelling, or building."   *Id.* § 8-12-16(e).   Plaintiff does not allege that McClung, Winans, and Winters inspected his

17

property, collected evidence, and took photographs because they sought to improve or demolish any structure on the property; in fact, Plaintiff avers that "there were no structures on the private off road parking facilitys [sic]."   (ECF No. 1 at 5.)   As such, the undersigned **FINDS** that even assuming § 8-12-16 provides for a private right of action against city code enforcement officials, its directives do not apply to the facts alleged in Plaintiff's complaint.   The undersigned therefore respectfully **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED** as to Plaintiff's claims against McClung, Winans, and Winters for violations of that statute.

### IV.   RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (ECF No. 5) be **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claims against McClung, Winans, and Winters in their individual capacities for their alleged violations of his Fourth Amendment rights by searching his property without a warrant on August 6, 2020, and his § 1983 claims against Eichhorn in his individual capacity for his alleged violations of Plaintiff's Fourth Amendment rights by searching his property without a warrant and arresting him without probable cause on August 10, 2020, and **GRANTED** as to all other claims.   It is further **RECOMMENDED** that this matter be **RE-REFERRED** to the undersigned for further proceedings with regard to the § 1983 claims based on alleged violations of the Fourth Amendment as outlined above and that all other claims be **DISMISSED**.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.   Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of

objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.   Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.   28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

ENTER:      May 3, 2021

Dwane L. Tinsley
United States Magistrate Judge

19