IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRYON MEEKS,

                        Plaintiff,

v.                                      CIVIL ACTION NO.   2:20-cv-00583

BOBBY MCCLUNG, et al.,

                        Defendants.

**MEMORANDUM OPINION AND  ORDER**

Pending before the Court is Plaintiff's Motion to Amend or in the Alternative Supplement Complaint.   (ECF No. 48.)   For the reasons more fully explained below, the motion is **GRANTED**.

*I.      BACKGROUND*

This matter arises out of a series of warrantless searches and seizures in Parkersburg, West Virginia.   Plaintiff Byron Meeks ("Plaintiff") owns and operates an auto repair shop in Parkersburg.   (ECF No. 1 at 5.)   Defendants are four Parkersburg city officials: Defendant Matthew Eichhorn is a Parkersburg police officer, and Defendants Darren Wimans, Bobby McClung, and Mike Winters are Parkersburg city code officials.   (*Id.*)   The Court refers to the four defendants collectively as "Defendants."

Plaintiff alleges that on August 6, 2020, Defendants, joined by another Parkersburg police officer, visited his shop.   (*Id.*)   Defendants told Plaintiff they were responding to a complaint

1

about one of his customer's cars, which he had parked on the street. (*Id.*) Plaintiff promptly moved the car off the street, onto his fenced-in property. (*Id.*) Although Plaintiff seemingly resolved the problem, he alleges Defendant McClung then conducted an unwelcomed, warrantless search of his property.[1] (*Id.*)

Plaintiff further alleges that on August 10, Defendant Eichhorn returned to his shop and conducted another warrantless search. (*Id.*) Afterwards, Defendant Eichhorn accused Plaintiff of having a stolen Honda SUV on his property. (*Id.*) Plaintiff denied this accusation. (*Id.*) He told Defendant Eichhorn that he had traded for the Honda the previous year and had the title and bill of sale as proof. (*Id.*) Defendant Eichhorn asked Plaintiff to show him these papers. (*Id.*) Plaintiff obliged. (*Id.*) Defendant Eichhorn then left, taking Plaintiff's papers with him, to further investigate the matter. (*Id.*) When Defendant Eichhorn returned later that day, he had neither an arrest warrant nor Plaintiff's papers, but nevertheless arrested Plaintiff for receiving a stolen vehicle.[2] (*Id.*)

Plaintiff sued Defendants the following month, alleging that these warrantless searches and seizures violated his First, Fourth, and Fourteenth Amendment rights. (*Id.* at 4.) He has since litigated the matter *pro se*, and he still has live Fourth Amendment claims against Defendants in their personal capacity. (*See* ECF Nos. 16, 21, 43, & 45.) After discovery ended, Defendants

---

[1] Plaintiff's *pro se* complaint states that he and Defendant McClung had a falling out as friends two years prior, which he believes was a motivating factor in this warrantless search. (ECF No. 1 at 5.) The Court notes that Plaintiff alleges most of the events described herein are the result of personal vendettas against him for a variety of reasons, ranging from a shouting match between he and Defendant McClung, to his running for Mayor of Parkersburg against Tom Joyce, the sitting mayor. (*Id.*) A more detailed recitation of these personal vendettas, none of which are particularly germane to the current motion, can be found in Magistrate Judge Tinsley's Proposed Findings and Recommendation. (ECF No. 16 at 1–4.)

[2] Before he was placed under arrest, Plaintiff alleges he called his title broker to confirm that the Honda was not stolen. (ECF No. 1 at 5.) Plaintiff further alleges the title broker told him that her records did not show the Honda as stolen. (*Id.*)

filed a motion for summary judgment, which the Court denied.   (ECF No. 45.)   No trial date is set.

Plaintiff alleges that while his case has been pending, Defendants and other Parkersburg officials have continued to violate his constitutional rights.   For instance, Plaintiff alleges that on June 9, 2021, Mayor of Parkersburg Tom Joyce ("Mayor Joyce"), and Parkersburg Chief of Police Joe Martin ("Chief Martin") "direct[ed] and supervis[ed] individuals cutting the locks off of [Plaintiff's] fence and . . . towing away vehicles" without a warrant.   (ECF No. 48 at 2.)   On June 20, Parkersburg police arrested Plaintiff for driving on a suspended license.   (*Id.*)   Plaintiff alleges that his license was suspended because of unpaid citations (that he was unaware of), which stemmed from Parkersburg officials' allegedly unlawful actions against him.   (*Id.*)   Plaintiff further alleges that "[s]imilar conduct was undertaken by the Defendants and others" on June 29 "when they again returned to [Plaintiff's] property without a warrant."   (*Id.*)   The Court understands this to mean yet another warrantless search occurred.   Then, on February 18, 2022, Parkersburg officials towed more vehicles off Plaintiff's property, again, without a warrant.   (*Id.*)   Plaintiff further alleges he was later arrested "under false allegations of a 'fraudulent scheme'" because he could not repair the vehicles that had been illegally towed.   (*Id.*)

After these events transpired, Plaintiff hired counsel, who promptly noticed their appearances.   (ECF Nos. 44 & 46.)   Plaintiff then filed a motion for leave to amend his *pro se* complaint to add claims arising from these later warrantless searches and seizures.   (ECF No. 48.)   Defendants filed a timely response in opposition, (ECF No. 49), to which Plaintiff timely replied.   (ECF No. 50.)   The matter is now ripe for adjudication.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "court[s] should freely give leave [to amend a pleading] when justice so requires."   "The Supreme Court has emphasized that 'this mandate is to be heeded.'"   *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   The Fourth Circuit has done so and adopted a policy that "liberally allow[s] amendment."   *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).   Indeed, leave may be "denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting *Johnson*, 785 F.2d at 509).   Importantly, "[d]elay alone is an insufficient reason to deny leave to amend."   *Id.* at 242.   Any "delay must be accompanied by prejudice, bad faith, or futility."   *Id.*; *see also Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984) ("Absent prejudice to the opposing party, the mere fact that an amendment is offered late in the case is not enough to bar it.").

Whether an amendment would be prejudicial is often "determined by the nature of the amendment and its timing."   *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). Courts tend to use a totality-of-the-circumstances analysis here, asking whether the new facts, theories, or claims were apparent at the time of filing, how far discovery has progressed, and whether there is an impending trial date.   *See, e.g.*, *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987); *Forstmann v. Culp*, 114 F.R.D. 83, 87 (M.D.N.C. 1987).   Of course, "[a]ll amendments present new facts, claims, or legal theories" that are likely to prejudice the defendant in some way. *Carlton & Harris Chiropractic, Inc., v. PDR Network, LLC*, No. 3:15-14887, 2021 WL 7967726,

4

at *4 (S.D. W. Va. Mar. 24, 2021).    The Court may only deny those amendments that would result in *undue* prejudice.  *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (quoting *Foman*, 371 U.S. at 182); *see also Sweetheart Plastics*, 743 F.2d at 1043–45 (applying an undue prejudice standard).

## III.    DISCUSSION

Plaintiff argues that justice requires leave to amend because, since filing his *pro se* complaint, he has been "bombarded . . . with an onslaught of ongoing" constitutional violations by "Defendants and other governmental actors."  (ECF No. 48 at 5.)  Plaintiff further avers that, until recently, he was "navigating a highly specialized and nuanced area of the law *pro se*," and he, like any layman, was unaware additional claims existed until retaining counsel.    (*Id.*)  Defendants contend that Plaintiff's proposed amendment is "untimely" and would "result[] in direct, material prejudice to" them.   (ECF No. 49 at 4.)   Specifically, Defendants claim this case has been "actively litigated" and forcing them to now go "back to square one" would "unduly prejudice[]" them.   (*Id.* at 1, 6).   Defendants also argue that the proposed amendment would be futile and Plaintiff's tardiness suggests bad faith.   (*Id.* at 5, 7.)

The Court agrees that justice requires Plaintiff be given leave to amend.   In his *pro se* complaint, Plaintiff alleged a series of unconstitutional searches and seizures of both himself and his property.   Plaintiff now alleges that Defendants and other Parkersburg officials responded to his lawsuit by upping the ante, escalating their allegedly unlawful practices.   The Court sees no reason why Plaintiff should not be allowed to amend his complaint to add these allegations.

Defendants claim that granting Plaintiff leave to amend would unduly prejudice them, but the Court is unpersuaded.   For starters, Plaintiff could not have included these additional facts in

his *pro se* complaint because they had yet to occur.   Also, the new legal theory he seeks to add, a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), lacked a good-faith basis at the time of filing.[3]   *Sweetheart Plastics*, 743 F.2d at 1044.   Any prejudice caused by an amendment that accounts for these developments would hardly be considered undue.

Next, any prejudice Defendants would encounter from having to conduct additional discovery is more than offset by the fact that no trial date is looming near.   To be sure, the Fourth Circuit has said that leave to amend should be denied when a plaintiff "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, *and*] *is offered shortly before or during trial*."   *Laber*, 438 F.3d at 427 (alteration in original) (emphasis added) (quoting *Johnson*, 785 F.2d at 509).   This is a no-brainer—allowing a late-stage amendment that adds an entirely new legal theory the defendant did not anticipate, and thus did not develop during discovery, would convert an otherwise orderly affair into trial-by-ambush.   The Federal Rules loathe such a thing.   *See Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 359 (1st Cir. 1998); *see also Deasy*, 833 F.2d at 41 ("It would be manifestly unfair to require defendant to go to trial without a fair opportunity to prepare her case.").   By contrast, when the case is not barreling towards trial, there is little cause for concern.   *Compare Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (affirming denial of leave to amend that would have caused an "eleventh hour change in [the] litigation."), *with Johnson*, 785 F.3d at 510 (granting leave to

---

[3] Plaintiff's *pro se* complaint indicates that he believed, at the time, that Defendants' actions were solely the result of personal vendettas against him.   He thus believed this was an isolated incident rather than a pervasive problem throughout Parkersburg.   Since Plaintiff filed his complaint, however, Defendant McClung, Mayor Joyce, and other Parkersburg officials have been found liable for violating the Fourth Amendment by conducting similar warrantless searches.   *Gold v. Joyce*, 2:21-cv-00150 (S.D. W. Va. July 13, 2022) (ECF No. 58).   In light of this, Plaintiff contends he now has a good-faith basis to allege that Mayor Joyce has "a pattern and practice of [conducting] unlawful search[es] and seizures targeted at certain individuals," which "gives rise to *Monell*" liability.   (ECF No. 50 at 3.)

amend because "[c]ircumstances [are] quite different [when] a . . . trial [is] not . . . imminent"); *see also Laber*, 438 F.3d at 426–29.   Here, no trial date has been set, so Defendants should have ample opportunity to prepare their defense against any new claims.   Having to reopen discovery may very well inconvenience Defendants, but mere inconvenience does not equate to undue prejudice.   *Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 727 (E.D. Va. 2011).

As far as futility and bad faith go, the Court is unconvinced that either are present.   An amendment is "futile" only if "the proposed amendment is clearly insufficient or frivolous on its face."   *Johnson*, 785 F.2d at 510.   Defendants argue that Plaintiff's proposed *Monell* claim would fail because "all claims against the Defendants in their official capacity as employees of the City of Parkersburg" have been dismissed.   (ECF No. 49 at 5.)   Maybe so, but what about a *Monell* claim based on other Parkersburg officials' allegedly unconstitutional conduct?   Those claims cannot be dismissed out of hand.   Turning now to bad faith, Defendants suggest Plaintiff acted in bad faith by not seeking leave to amend earlier.   (*Id.* at 7.)   The Court disagrees. Plaintiff, a layman, was simply unaware of these potential claims until he hired counsel.   Once Plaintiff retained counsel and became aware of these additional claims, he promptly sought leave to amend.   Lack of knowledge falls far short of bad faith.   *MedCom Carolinas*, 42 F.4th at 198– 99 (discussing the contours of bad faith).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend is **GRANTED**.   (ECF No. 48.) The Amended Complaint **SHALL** be filed **WITHIN 10 DAYS**, and all allegations contained therein **SHALL** be deemed **DENIED** by Defendants.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        January 26, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE

8